**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 05, 2025.**

_____
**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RODNEY L WALKER, | § | CASE NO. 25-60234-MMP |
| | § | |
| DEBTOR. | § | CHAPTER 13 |

**OPINION AND ORDER**

**I.   INTRODUCTION**

The Court heard the Trustee's *Objection to Confirmation of Debtor's Proposed Chapter 13 Plan* (ECF No. 11, "**Objection**") and the Debtor's *Response to Trustee's Objection to Debtor's Confirmation* (ECF No. 12) and determined the *Objection* should be overruled. The Court will hold a status hearing on confirmation of the Debtor's Plan on September 10, 2025 to discuss confirmation issues not addressed by this Opinion and Order.

1

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b). Venue is proper under 28 U.S.C. § 1408 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L). This Opinion and Order serves as this Court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014.

## II. BACKGROUND

The Debtor's Chapter 13 Plan ("**Plan**") proposes to pay 100% of general unsecured claims, including his student loan debt. ECF No. 2, pp. 1, 4. The Plan, however, includes a wrinkle: the Debtor proposes to pay the student loan debt directly, rather than through the Trustee. ECF No. 2, p. 4 § 7.5. Although the Plan lists no monthly payment obligation, the Debtor testified he intended to increase his current monthly payments of around $170 to a little over $300 to pay off his student loans by the end of the Plan. He also testified he has been periodically paying his student loan debt since 2018, is current on that debt, and owes around $16,000. *See* PoC #1 (Proof of Claim filed by the U.S. Department of Education on behalf of Nelnet stating the amount owed as $16,703.62). The Debtor understands he must make these payments throughout the life of his Plan to pay off his student loan debt within the plan period.

The Debtor's Schedules show he and his spouse are employed and earn around $8,000 per month. ECF No. 1, pp. 45, 46. After allocating about $5,000 for anticipated monthly expenses, the Debtor projects he will net around $3,000 per month. ECF No. 1, p. 50. The Debtor's Plan proposes his monthly Plan payment to the Trustee will be $1,800. ECF No. 2, p. 1.

## III. ANALYSIS
### a. THE PARTIES' ARGUMENTS

The Trustee objected to the Debtor's Plan asserting that the Fifth Circuit's ***Durand-Day*** and ***Kessler*** opinions, read along with changes to the Bankruptcy Code made in the Bankruptcy

2

Abuse Prevention and Consumer Protection Act ("**BAPCPA**"), prohibit direct pay of the student loan creditor.[1] ECF No. 11 ¶¶ 4–10. The Debtor responded that neither ***Durand-Day*** nor ***Kessler*** require the Debtor to pay his student loan creditor through the Trustee. ECF No. 12.

The Trustee also argued the Plan unfairly discriminated between general unsecured creditors by paying the student loan debt directly and the rest of the general unsecured debts through the Trustee. The Debtor denied discriminating, but argued any such discrimination was permissible discrimination.

The Court took the matter under advisement and now issues this Opinion and Order concluding neither ***Durand Day*** nor ***Kessler*** preclude the Debtor from directly paying his student loan debt and that such direct repayment, to the exclusion of other unsecured creditors, does not *by itself* constitute unfair discrimination. But the Court will reset confirmation of the Debtor's proposed Plan to consider other confirmation issues, such as feasibility, not addressed in this Opinion and Order.

### b. THE BANKRUPTCY CODE AND PRE-BAPCPA FIFTH CIRCUIT CASE LAW

To address the Trustee's argument that ***Durand-Day*** and ***Kessler*** prohibit direct pay of the student loan, the Court looks to the Bankruptcy Code.[2] Section 1322(a)(1) governs the contents of Chapter 13 plans and states: "The plan (1) shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Thus, § 1322(a)(1) requires a debtor to hand over to the trustee that amount of money necessary to execute their plan. *See* **Matter of Aberegg**, 961 F.2d 1307, 1309 (7th Cir. 1992) (interpreting the same language pre-BAPCPA).

---

[1] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, S. 256, 10th Cong. (2005) (enacted and became Public Law No. 109-8) ("**BAPCPA**"); **Bassel v. Durand-Day (Matter of Durand-Day)**, 134 F.4th 846 (5th Cir. 2025); **Kessler v. Wilson (Matter of Kessler)**, 655 F. App'x 242 (5th Cir. 2016).
[2] All statutory citations and references are to title 11 of the United States Code, unless otherwise noted.

3

Section 1326(a)(1)(A) governs plan payments and states: "Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount (A) proposed by the plan to the trustee." Thus, § 1326(a)(1)(A) requires a debtor to begin making payments on the proposed Chapter 13 plan within 30 days of the earlier of the order for relief or the date the plan is proposed.

Nothing in these two provisions, prohibits the Debtor from serving as a disbursing agent with respect to some debts in a Chapter 13 plan. ***In re Mahler***, Case No. 22-21674, 2023 WL 3880465, at *2 (Bankr. E.D. Wis. June 7, 2023). Rather, two other provisions within § 1326 contemplate plans in which a debtor may pay creditors directly. § 1326(a)(1) ("[T]he debtor shall commence making payments . . . —(C) that provide[] adequate protection directly to a creditor holding an allowed claim. . . ."); § 1326(c) ("*Except as otherwise provided in the plan or in the order confirming the plan*, the trustee shall make payments to creditors under the plan.") (emphasis added).

BAPCPA amended § 1326(a) to allow for cash payment plans to adequately protect secured creditors of personal property. *BAPCPA*, § 309(c)(2); CONGRESSIONAL RESEARCH SERVICE, LIBRARY OF CONGRESS, Public Law No. 109-8 (04/20/2005); H.R. Rep. No. 109-31, pt. 1, at 73 (2005). Thus, post-BAPCPA, the Bankruptcy Code permits a plan that proposes to pay some creditors directly. ***Mahler***, 2023 WL 3880465, at *2; ***In re Hickey***, 618 B.R. 314, 319 (Bankr. N.D. Ala. 2020); *see also* ***First Bank and Trust v. Gross (In re Reid)***, 179 B.R. 504, 507 (E.D. Tex. 1995) (saying § 1326(c) (which was left untouched by BAPCPA) shows payments through a chapter 13 trustee are not the exclusive method of disbursement).

The Fifth Circuit's pre-BAPCPA case law allowed direct debtor payments. *Foster v. Heitkamp (Matter of Foster)*, 670 F.2d 478, 486 (5th Cir. 1982) ("We agree with those courts which have concluded that Congress left open in [§] 1326(b) the possibility of direct disbursements 'under the plan' by the Chapter 13 debtor."); *see also* *Reid*, 179 B.R. at 508 ("[T]he decision to permit a debtor to act as his own disbursing agent is left to the discretion of the bankruptcy judge."). Other bankruptcy courts considering similar questions have continued to rely on pre-BAPCPA cases after 2005 to find that a debtor can be a disbursing agent in a Chapter 13 plan. *Mahler*, 2023 WL 3880465, at *2 (citing *Aberegg*, 961 F.2d at 1310); *Hickey*, 618 B.R. at 318–19 (citing *In re Burkhart*, 94 B.R. 724, 725 (Bankr. N.D. Fla. 1988)); *In re Gonzales*, 570 B.R. 788, 794 (Bankr. S.D. Tex. 2017) (citing *Foster*, 670 F.2d at 486); *In re Heinzle*, 511 B.R. 69, 76–77 (Bankr. W.D. Tex. 2014) (citing *Foster*, 670 F.2d 486); *In re Clay*, 339 B.R. 784, 788–89 (Bankr. D. Utah 2006) (discussing *In re Case*, 11 B.R. 843, 846 (Bankr. D. Utah 1981)). Furthermore, the Fifth Circuit positively cited *Foster* in its *Kessler* opinion regarding debtors' direct payments to a mortgage creditor. *Kessler*, 655 F. App'x at 244.

The Fifth Circuit, post-BAPCPA, has said: "Chapter 13 debtors have a significant amount of flexibility in formulating their plans." *Durand-Day*, 134 F.4th at 850. In acknowledging that flexibility, other bankruptcy courts have found a debtor can directly pay unsecured creditors. *See, e.g.*, *In re Orawsky*, 387 B.R. 128, 155–56 (Bankr. E.D. Pa. 2008) (allowing a debtor to directly pay non-dischargeable student loan debt); *In re Machado*, 378 B.R. 14, 18 (Bankr. D. Mass. 2007) (same); *In re Gregory*, 143 B.R. 426–27 (Bankr. E.D. Tex. 1992) (same principle, except debtor directly paid an IRS priority claim). The Court agrees and concludes the Bankruptcy Code permits direct payments to creditors.

5

c.  ***DURAND-DAY* AND *KESSLER***

The Trustee believes ***Durand-Day*** and ***Kessler*** have cast doubt on whether a debtor can be a disbursing agent to a student loan creditor in a Chapter 13 plan. But ***Durand-Day*** and ***Kessler*** do not cast a shadow on the propriety of the general rules outlined by ***Foster*** and pre-BAPCPA Fifth Circuit case law.

In reviewing a pair of consolidated Chapter 13 cases, ***Durand-Day***, generally considered whether, over objection, debtors could confirm a plan that did not commit all of their disposable income and did not fully pay their non-dischargeable student loan debt within the life of the plan. ***Durand-Day***, 134 F.4th at 848, 850. Under § 1325(b)(1), if a trustee or creditor objects to confirmation, a debtor must either (1) pay the entire allowed amount of that creditor's claim "under the plan" or (2) pay all of their disposable income into the plan. *Id.* at 850. In ***Durand-Day***, both of the debtors' plans proposed to continue paying off their student loan debt after the plan-term ended and did not contribute all of their disposable income into the plan. *Id.* at 849. The trustee for both cases objected under § 1325(b)(1), and the debtors argued the student loan debts were paused and "did not need to be paid in full during the life of the [p]lans." *Id.* The question presented to the Fifth Circuit thus was: What did Congress mean in § 1325(b)(1)(A) by "under the plan"? *Id.* at 851. After rigorous textual analysis, the Fifth Circuit concluded that "under the plan" in § 1325(b)(1)(A) means "by the end date of a Chapter 13 plan" and that the debtors plans must propose to pay the student loan debt in full during the life of the plan. *Id.* at 855.

Here, the Debtor's Plan proposes to pay his student loan debt directly to the creditor during the life of the Plan. ECF No. 2 § 7.5. The creditor has not objected to this treatment. Although the Plan does not obligate the Debtor to make a monthly payment, the Debtor testified he intends to increase his monthly payment to around $300. If made, this increased payment amount would

6

ensure the entire claim would be paid off by the end of the Debtor's 60-month Plan. The Debtor's Plan, along with his testimony, show the Plan *could* comply with **Durand-Day**'s mandate that all allowed unsecured claims be paid in full by the end of the Plan.

Although one of the debtors in **Durand-Day**, like the Debtor here, proposed to pay the student loan debt directly rather than through the trustee, the Fifth Circuit did not consider that point. *Id.* at 849. **Durand-Day** merely says a debtor must either commit all of their disposable income to the Chapter 13 plan *or* fully pay off all allowed unsecured claims by the end of the Chapter 13 plan. *Id.* at 856. **Durand-Day** does not require a debtor to pay off student loans through the trustee and does not prescribe a method for paying off student loan debt. **Durand-Day** only requires a debtor's plan pay off student loan debt by the end of the plan. The Trustee's objection that he is not the disbursing agent is a different question from the one the Fifth Circuit considered in **Durand-Day**.

Likewise, **Kessler** does not hold that the debtor cannot directly pay his student loan debt. **Kessler** questioned whether debtors who failed to make direct payments to their mortgage creditor could still receive a discharge if all other payments through the trustee were made. **Kessler**, 655 F. App'x at 243. The Kesslers' Chapter 13 plan provided for the direct payment of their mortgage and for payments through the trustee to other creditors. *Id*. After that plan was confirmed, the Kesslers made all required payments to the trustee, but they did not complete the direct payments to the mortgage creditor. *Id*. And yet, at the end of the Kesslers' plan, they moved for a discharge order. *Id*. The Fifth Circuit affirmed the bankruptcy court's denial of that motion because the Kesslers' direct payments to the mortgage creditor were considered payments *under the plan*, and because not all payments *under the plan* had been completed, the Kesslers were not eligible for a discharge. *Id.* at 244. The Fifth Circuit concluded, in part, such payments were

7

payments *under the plan* because of its earlier statements in *Foster* that "the bankruptcy code allows for such direct payments, and [] that post-petition mortgage payments, whether paid directly or through a trustee, are paid 'under the plan' when the plan also provides for the curing of pre-petition arrears on the debt." *Id.* (citing *Foster*, 670 F.2d at 486, 488–89).[3] *Kessler* says nothing about whether a debtor's plan can be *confirmed* if it includes direct payments to a creditor but speaks only to whether a debtor is *eligible for a discharge* if not all payments under the plan have been completed. That a debtor risks not receiving a discharge if they do not make the direct payments to creditors under the plan does not automatically trigger a denial of confirmation of a plan.

Nothing in *Durand-Day* or in *Kessler* contradict the Fifth Circuit's view that direct payments are generally allowed in a Chapter 13 plan. And *Kessler* definitively says direct payments are payments made under the plan. *Kessler*, 655 F. App'x at 244. Therefore, when a debtor proposes a plan that pays their student loan debt directly to the creditor rather than through the trustee and proposes to pay off all of that student loan debt by the end of the Chapter 13 plan, those direct payments are made under the plan and can meet *Durand-Day*'s mandate.

Of course, just because nothing prohibits a debtor from acting as a disbursing agent does not mean a court must confirm a plan where a debtor acts as a disbursing agent. The feasibility, and good faith of a plan can be affected by an unqualified debtor's attempt to serve as his own disbursing agent, and those determinations are still subject to objection and left to the discretion of the bankruptcy judge. A debtor that has exhibited an inability to serve as his own disbursing agent might be unable to confirm a plan including such a direct payment method.

---

[3] While *Foster* involved a debtor directly paying a mortgage creditor, rather than a student loan creditor, its confirmation factor analysis still applies. *Foster*, 670 F.2d at 482, 487.

8

### d. THE PLAN'S DISCRIMINATORY TREATMENT

At the hearing, the Trustee raised another objection based on the Plan's discriminatory treatment of the student loan creditor as compared to other general unsecured creditors.

Section 1322(a)(3) and (b)(1) require a debtor to treat creditors within a class similarly and prohibit a debtor from unfairly discriminating between classes. Section 1322(b)(1) incorporates by reference § 1122's general rule that substantially similar claims be placed in the same class. § 1122(a); *Save Our Springs (S.O.S.) All., Inc. v. WSI (II)-COS, L.L.C. (In re Save Our Springs (S.O.S.) All., Inc.)*, 632 F.3d 168, 174 (5th Cir. 2011). An exception may be made if a debtor gives a legitimate reason the claims are classified separately. *S.O.S. All.*, 632 F.3d at 174; *see also Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd. II (Matter of Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1167 (5th Cir. 1993) (" . . . [G]ood business reasons [may] support separate classification.").

The Debtor's Plan purports to treat all unsecured creditors similarly in that it proposes to pay all general unsecured claims in full, but discriminates in the methodology by which those creditors will be paid in full (via the Trustee or the Debtor as disbursing agent and with regular versus unspecified payments).

The Plan places the student loan creditor in a class all its own as the class to be paid in full directly by the Debtor, while all other unsecured creditors are placed in a class that will be paid in full through the Trustee's receipt of the Debtor's monthly plan payments. Most troubling for the Court, the Plan does not *require* regular payments to the student loan creditor. ECF No. 2 § 7.5. Instead, the Plan suggests the student loan debt will be paid sometime before the end of the Plan, treating the obligation like a balloon payment not due until the end of the Plan and shifting the risk

9

of non-payment during the Plan onto the student loan creditor.[4] In one case, the general unsecured creditors are being paid pro-rata from the Trustee's receipt of the Debtor's monthly plan payments and the Trustee can track and monitor the Debtor's Plan progress. In the other, the student loan creditor is left wondering (and with the risk of non-payment), for the full term of a 5-year Plan, when it will be paid. In this way, the treatment is discriminatory.

At the hearing, the Debtor argued the separate classification is permissible—not unfairly discriminatory—because the student loan creditor holds presumptively non-dischargeable debt which may continue to accrue interest during the bankruptcy and over the life of the Plan. He also argued the student loan debt may be forgiven, placed into forbearance or deferment, or otherwise receive favorable treatment the other general unsecured debts may not receive. The Debtor's counsel stated the Debtor may wish to pay this debt earlier to avoid any non-dischargeable interest piling up. And the Debtor testified he is scheduled to pay off the student loan debt sometime in 2028 and that he intends on increasing his monthly payments to $300 to ensure the student loan debt will be paid within the life of the Plan.

These are legitimate reasons to classify this student loan debt differently than other general unsecured debts. Because the non-dischargeability of the debt here was not contested for purposes of this issue, the Court will presume the student loan debt is non-dischargeable and may continue to accrue interest (even if the student loan is in deferment) which will add to the amount owed by the Debtor at the end of his Plan. This is not a consideration when it comes to the Debtor's other general unsecured debts, which largely consist of credit card debts. ECF No. 1, pp. 35–40; PoC #3-1, p. 2. As such, the Debtor's student loan debt is different from the rest of his general unsecured

---

[4] The problem with such treatment is its feigned and ephemeral satisfaction of the ***Durand-Day*** mandate, without any structure or plan guidelines to carry out that mandate. Practically, the Debtor who fails to regularly contribute some amount to pay down this student loan debt will eventually lack the anticipated funds necessary to satisfy that debt absent a lottery victory.

10

debt and may properly be separately classified. *Orawsky*, 387 B.R. at 155–56; *Machado*, 378 B.R. at 18; *In re Simmons*, 288 B.R. 737, 744 (Bankr. N.D. Tex. 2003). But this separate classification must ultimately be fair to the student loan creditor and the other general unsecured creditors.

Although, the Debtor related his intention to make regular payments to the student loan creditor, nothing in the Plan addresses the Court's concern that the student loan creditor might not receive regular payments throughout the life of the Plan and be left with no reduction of its claim after five years. As such, neither the Trustee nor the student loan creditor has a way to intervene in the case if the loan is not paid down. With each passing month without payment, the risk of failure to comply with *Durand-Day*'s mandate increases. Barring plan language requiring regular payments or a plan mechanism which allows a creditor or trustee to regularly verify that the debtor is in fact making regular payments, or obtaining other loan relief, such that his student loan and other obligations can be satisfied within the plan period as required by *Durand-Day*, the Court would find the treatment unfairly discriminatory.

To avoid a scenario where a debtor promises, but fails, to regularly (but not necessarily monthly) directly pay certain unsecured creditors while other similarly situated unsecured creditors receive regular monthly payments from the trustee's receipt of the debtor's plan payments, the Court will require some plan assurance mechanism, such as reporting on the reduction of the student loan debt, that creates an opportunity for the Trustee, the U.S. Trustee, or the student loan creditor to monitor and enforce compliance with *Durand-Day*'s mandate in the Debtor's confirmed plan. The Court needs to know *how and when* the Debtor plans to pay off the student loan creditor within the life of the Plan; and whether the appropriate stakeholders can ensure the Plan is on track to pay off the student loan creditor by the end of the plan period.

An appropriate plan mechanism would have to allow the chapter 13 trustee to address any failure by the Debtor should the regular reduction in the student loan debt not reach a level that would realistically allow the Debtor to pay off his student loan debt within the life of the Plan—meeting **Durand-Day**'s confirmation requirement. The proposed mechanism would allow for the verification of the Plan's ongoing execution, which in turn gives the Court confidence that general unsecured creditors and the Debtor's student loan creditor will arrive at the same destination—their claim being paid in full by the end of the Plan—even though the vehicle (unspecified direct pay by the Debtor versus monthly payment through the Trustee) is different.

Thus, with modifications outlined, the Debtor's Plan could comply with § 1322's requirements, and its discriminatory treatment would not bar the Debtor's proposed direct payments. See **Orawsky**, 387 B.R. at 155–56; **Machado**, 378 B.R. at 18–19.

### IV.　FEASIBILITY OF THE DEBTOR AS DISBURSING AGENT

Finding no per se prohibition on direct payments of student loan debt and that the Debtor's Plan *could* fairly discriminate between general unsecured creditors does not answer the question of whether the Court should, in its discretion, confirm a plan allowing the Debtor to directly pay the Debtor's student loan debt. See **Reid**, 179 B.R. at 508.

Section 1326(b) "makes it clear that the Chapter 13 trustee is normally to make distributions to creditors of the payments made under the plan by the debtor." **Foster**, 670 F.2d at 486. But direct payments may be appropriate if the Debtor offers a convincing reason. ***Id.*** at 487. To assess the "convincing reason" the Court must determine, before it can confirm a plan, if "the debtor will be able to make all payments under the plan and [] comply with the plan." § 1325(a)(6); **Foster**, 670 F.2d at 486.

In *Foster*, the Fifth Circuit laid out a non-exhaustive list of factors bankruptcy courts should consider when deciding to confirm a plan where the debtor will act as a disbursing agent:

(1) the degree of responsibility of the debtor;

(2) the reasons contributing to the debtor's bankruptcy;

(3) the creditor's ability to look after its own interests; and

(4) the trustee's duty to supervise the plan's execution.

*Foster*, 670 F.2d at 486.  Along with the factors above, the Court will look to the Debtor's net monthly income and overall financial health, the Debtor's history of paying this particular debt, and the Plan's proposed treatment of this debt and similar debts.  Because the Court has not heard argument or taken testimony directly addressing the feasibility of the Debtor's Plan, including his ability to act as disbursing agent for his student loan debt, the Court reserves judgment and analysis on this point for the reset confirmation hearing.

**V.    CONCLUSION**

For the reasons stated above, the Court will overrule the Trustee's *Objection* and hold a status hearing[5] on the confirmation of the Debtor's Plan on September 10, 2025.  It is, therefore,

**ORDERED** that the Trustee's *Objection to Confirmation of Debtor's Proposed Chapter 13 Plan* (ECF No. 11) is **OVERRULED**.  It is further

**ORDERED** that the Court will hold a status hearing on confirmation of the Debtor's chapter 13 plan of reorganization on **SEPTEMBER 10, 2025 AT 9:15 A.M.** in the United States Bankruptcy Court for the Western District of Texas, United States Courthouse, 800 Franklin Avenue, Waco, Texas.

# # #

---

[5] A status hearing is appropriate because the Court has not provided (i) the chapter 13 Trustee much time to prepare for a chapter 13 confirmation hearing next week, nor (ii) given the Debtor an opportunity to amend its plan to address concerns raised by the Court's Opinion and Order.